IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIMOTHY A. HOLMES,
  Petitioner,

v.         Case No.  3:09cv64/RV/CJK

KENNETH S. TUCKER,[1]
  Respondent.
_____

ORDER and
<u>REPORT AND RECOMMENDATION</u>

  Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 16).  Petitioner has replied.  (Doc. 18).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the Court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

BACKGROUND AND PROCEDURAL HISTORY

  On October 17, 2006, petitioner entered counseled no contest pleas to the

_____

  [1]Kenneth S. Tucker succeeded Edwin G. Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

following charges in the Circuit Court for Escambia County Florida:

| Case Number | Offense(s) |
| --- | --- |
| Case No. 06-0619: | Burglary of a dwelling with assault or battery, sexual battery with a weapon or force, aggravated battery with bodily harm, petit theft |
| Case No. 06-0565 | Burglary of an unoccupied conveyance, grand theft |
| Case No. 06-0564 | Burglary of an unoccupied conveyance, petit theft |
| Case No. 06-0563 | Burglary of an unoccupied dwelling |
| Case No. 06-0562 | Burglary of an unoccupied conveyance |
| Case No. 06-0561 | Burglary of an unoccupied dwelling, grand theft |
| Case No. 06-0560 | Burglary of an unoccupied conveyance, petit theft |
| Case No. 06-0559 | Burglary of an unoccupied dwelling, petit theft |
| Case No. 06-0481 | Burglary of an unoccupied conveyance, felony petit theft |
| Case No. 05-3409 | Burglary of an unoccupied conveyance, petit theft (VOP) |
| Case No. 05-3410 | Burglary of an unoccupied conveyance, grand theft (VOP) |
| Case No. 05-3566 | Burglary of an unoccupied conveyance, grand theft (VOP) |

(Doc. 16, Ex. A, pp. 56-83).[2]   The pleas were "straight-up" to the court with the

---

[2]Hereafter, all references to exhibits will be to those provided at Doc. 16, unless otherwise noted.

opportunity to argue in mitigation of sentence after completion of a presentence investigation.  (*Id*., pp. 48-54, 56-83).  There was no agreement for a particular sentence. (*Id*.).  Petitioner had signed a Sentence Recommendation form to that effect the previous day, which included, in relevant part, a summary of the charges as well as the rights petitioner was waiving by entering his pleas.  (*Id*., pp. 59, 48-54).  On December 15, 2006, petitioner was adjudicated guilty and sentenced to life imprisonment without parole on the most serious charges (armed sexual battery of an 84-year-old woman and armed burglary with assault or battery), and to concurrent sentences of 15 years to 60 days jail on the others.  (*Id.*, pp. 31-46).

Petitioner did not perfect a direct appeal from the judgment and sentence. (Doc. 1, p. 2).  Petitioner apparently filed a timely, *pro se* notice of appeal.  (Doc. 16, Ex. B, p. 2).  On January 18, 2007, the Florida First District Court of Appeal ("First DCA") ordered petitioner to pay the filing fee or submit an order of indigence, and further ordered petitioner to file an amended notice of appeal containing a proper certificate of service showing service on the Office of the Attorney General.  (*Id*., pp. 4-6).  After petitioner failed to timely respond to the orders, the First DCA dismissed the appeal on April 3, 2007.  (*Id*., p. 7).

On April 24, 2007, petitioner filed a Petition for Belated Appeal in the First DCA (ex. C, pp. 1-4), which he later supplemented (*id*., pp. 28-30).  The petition was "denied as insufficient" on July 16, 2007.  *Holmes v. State*, 963 So.2d 231 (Fla. 1st DCA 2007) (Table) (copy at Ex. C, p. 31).  Petitioner's motion for rehearing was denied on August 28, 2007.  (Ex. C, p. 32-34).

On September 19, 2007, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. A, pp. 1-23).  On January

18, 2008, the trial court entered an order dismissing petitioner's motion in part and denying it in part (*id*., pp. 24-29), attaching portions of the trial record (*id*., pp. 30-84).  The First DCA summarily affirmed without written opinion.  *Holmes v. State*, 992 So. 2d 255  (Fla. 1st DCA 2008) (Table) (copy at Ex. D, p. 8).  The mandate issued November 13, 2008.  (*Id*., p. 9).

Petitioner filed his *pro se* federal habeas petition on February 17, 2009.  (Doc. 1).

STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from

Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the

merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record

reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 127 S. Ct. 2842, 2858. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Within this framework, the court will review petitioner's claims.

## ANALYSIS

Ground 1      "The trial court violated the Due Process Clause of the Fourteenth Amendment where the judge accepted petitioner's nolo contendere plea without an affirmative showing that it was intelligent and voluntary." (Doc. 1, pp. 4, 4-A through 4-B)

In his first ground for relief, petitioner alleges that the trial judge failed to comply with the requirements of Florida Rule of Criminal Procedure 3.172(c)(3), when he accepted petitioner's no contest pleas as knowing, intelligent and voluntary without first determining that petitioner understood he was giving up the right to plead not guilty, the right to a trial by jury with the assistance of counsel, the right to compel the attendance of witnesses on his behalf, the right to confront and cross-examine adverse witnesses, and the right to avoid compelled self-incrimination. Petitioner acknowledges that prior to the plea hearing he signed the Sentence Recommendation form which described the rights he was waiving. (Doc. 1, p. 4-A). He nonetheless argues that "[s]igning the waiver does not mean that Holmes was

indeed advised of the specific rights, or that the rights were voluntarily and knowingly waived." (*Id.*, p. 4-B).[4]  Petitioner asserts he exhausted this claim by raising it in his motion for postconviction relief.

Respondent asserts this claim is procedurally defaulted, because the state court denied relief on an independent and adequate state procedural-bar ruling (that the claim was not cognizable in a Rule 3.850 proceeding because it could have and should have been raised on direct appeal).  (Doc. 16, pp. 13-14).  In the alternative, respondent asserts that the state court's alternative ruling on the merits was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  (*Id.*, p. 14).

A.    Exhaustion and Procedural Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the state the "'opportunity to pass upon and correct'

----

[4]Specifically, petitioner argues:

Although the judge did ask Holmes if he signed the waiver, he never explained what those rights were.  There is nothing in the record to demonstrate that he [petitioner] could understand the form he signed or what his attorney told him about it.  We simply cannot be assured from the superficial plea colloquy here that Holmes' plea was voluntary and intelligent.  This case is like many others in our judicial system where defendants are advised to sign here or there and to agree with everything the judge says.  The signing of a constitutional rights waiver is insufficient to refute that Holmes actually knew the fundamental rights he was waiving, nor the consequences.  Signing the waiver does not mean that Holmes was indeed advised of the specific rights, or that the rights were voluntarily and knowingly waived.

(Doc. 1, pp. 4-A through 4-B).

[5]Section 2254 provides, in pertinent part:

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.

If a petitioner presents his federal claim in state court and the state court rejects the claim on an independent and adequate state ground of procedural bar, the claim is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S.

---

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In that circumstance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower, supra.*  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To be credible, such a claim

requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.*, 513 U.S. at 327.

Here, when petitioner presented his claim in state court, he labeled it as follows: "Defendant is entitled to withdraw his plea on the basis that it was not intelligently and voluntarily entered because the trial court failed to adequately inquire into Defendant's understanding of the U.S. Constitutional rights he was waiving by entering into the plea agreement." (Doc. 16, Ex. A, p. 2). Petitioner set forth due process principles and argued that the plea colloquy did not affirmatively show that he knowingly and intelligently entered his plea. The Rule 3.850 court construed petitioner's claim as one "of trial court error," and dismissed the claim with prejudice, explaining:

> Defendant's claim of trial court error is not cognizable in a motion for postconviction relief, and consequently, Defendant is not entitled to relief on this basis. Trial court error may only be addressed in a postconviction motion if the error rises to the level of fundamental error. "Fundamental error has been defined as one that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process." Scroggins v. State, 691 So.2d 1185, 1189 (Fla. 4th DCA 1997), citing Kilgore v. State, 688 So.2d 895 (Fla. 1996). The test for determining fundamental error is whether the error goes to the foundation of the case or goes to the merits of the cause of action. See State v. Fountain, 930 So. 2d 865 (Fla. 2nd DCA 2006). An improper plea colloquy by the Court is not a claim which goes to the merits of the cause of action or amounts to the denial of due process. Defendant, therefore, fails to allege a claim which rises to the level of fundamental error, and the instant claim must be dismissed with prejudice.

(Ex. C, p. 26).

This Court must determine whether the state court's dismissal rested on adequate state grounds.  It is true, as respondent points out, that Florida has a firmly established and regularly followed procedural rule that "[i]ssues that were, or could have been, raised on direct appeal are not cognizable on collateral attack."  *See, e.g., Lopez v. Singletary*, 634 Fo.2d 1054, 1056 (Fla. 1993); *Johnson v. State*, 593 so.2d 206 (Fla. 1992).  This rule is codified in Florida Rule of Criminal Procedure 3.850, which provides, "This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."  Fla. R. Crim. P. 3.850(c).  Thus, "a Defendant who did not present an issue on direct appeal when a remedy was then available, cannot raise the issue in a subsequent postconviction motion, because the right to present the issue is waived."  *Moore v. State*, 768 So.2d 1140, 1141-42 (Fla. 1st DCA 2000) (citations omitted).  "The defendant's waiver of the right to pursue these remedies in the trial court and on direct appeal is a procedural default that serves as a bar to consideration of the issue in a subsequent postconviction motion under rule 3.850."  *Id.* at 1142.

It does not appear, however, that Florida courts have regularly applied this procedural bar to a defendant attempting to raise, under Rule 3.850, a claim that his guilty plea was involuntary due to the trial court's failure to ensure, through an adequate colloquy under Fla. R. Crim. P. 3.172, that the defendant was aware of the rights he was waiving by entering his plea.  This Court has surveyed Florida law on the issue and been unable to find cases regularly applying the procedural bar in that context.  Neither the Rule 3.850 court's order, nor the respondent's answer, identifies a case where a Florida court has construed a claim like petitioner's as one of trial court error (as opposed to one that the defendant's plea was involuntary).  Neither the

Rule 3.850 court's order, nor the respondent's answer, identifies a case where a postconviction court has imposed the procedural rule discussed above to a defendant attempting to raise for the first time in a Rule 3.850 motion, a claim that his plea was involuntary due to the trial court's failure to conduct an adequate plea colloquy. Respondent cites *Moore v. State*, *supra*, but that case is inapposite.  In *Moore*, a defendant convicted after a jury trial filed a motion for postconviction relief raising a sentencing error (the trial court erred in imposing a habitual offender sentence without ordering a presentence investigation).  The First District held that the defendant was precluded from asserting his sentencing error claim in a postconviction motion, because the defendant could have raised the issue at trial, after trial, or on direct appeal, but failed to do so.  *Moore* did not involve an involuntary plea claim.

Florida Rule of Criminal Procedure 3.850 expressly authorizes a defendant who has entered a plea of no contest to challenge his judgment of conviction in a postconviction motion on the ground that the plea was involuntary.  Fla. R. Crim. P. 3.850(a)(5).  That was precisely the nature of petitioner's postconviction claim. Florida courts have allowed defendants to raise claims like petitioner's in a motion for postconviction relief.  In *Carruthers v. State*, 42 So.3d 337 (Fla. 4th DCA 2010), the Fourth District rejected the State's invitation to construe, as claims of trial court error, a postconviction movant's claims that his plea was involuntary because there was no factual basis for it and because the trial judge failed to explain to him the nature of the charges against him.  *Id*. at 339.  The court held that the claims were properly construed as asserting the defendant's plea was involuntary.  The court further held that "a motion for postconviction relief is the proper vehicle for raising the involuntariness of a plea, which can result because the trial court failed to conduct

the plea colloquy in a proper manner." *Id*. at 339.  *See also, e.g., Griffin v. State*, 820 So.2d 906, 913 (Fla. 2002) ("[A] defendant's failure to timely move to withdraw a plea on voluntariness grounds forecloses review on direct appeal, and the defendant's sole avenue of review is through a collateral attack."); *Rosario v. State*, 903 So.2d 1015 (Fla. 2 DCA 2005) (reversing trial court's summary on-the-merits denial of postconviction claim that defendant's no contest plea was involuntary because the trial court's plea colloquy failed to conform to the requirements of Fla. R. Crim. P. 3.172(c) and thereby caused the defendant to enter a plea without awareness of the rights he was waiving; remanding for the trial court to either provide portions of the record conclusively refuting the claim or conduct an evidentiary hearing).

This Court cannot conclude that the state court's procedural bar ruling rested on adequate state grounds.  Therefore, respondent's procedural default defense should be rejected.  That does not mean, however, that petitioner is entitled to *de novo* review of this claim.  Because the state court alternatively addressed the merits, the Court will review that merits ruling under AEDPA's deferential standard.

B.    Clearly Established Federal Law

In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea.  *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926).  "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial[,]" including the defendant's privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers.  *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969).

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)   "A plea may be involuntary [if] the accused does not understand the nature of the constitutional protections that he is waiving." *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S. Ct. 2253, 2257 n. 13, 49 L. Ed. 2d 108 (1976) (citation omitted).   Accordingly, in the context of a guilty plea the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. at 242, 89 S. Ct. 1709.  The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it."  *Brady*, 397 U.S. at 749, 90 S. Ct. at 1469.

C.    Federal Review of State Court Decision

The state trial court alternatively ruled that petitioner's claim failed on the merits, because petitioner failed to establish he was prejudiced by the trial judge's alleged failure to comply with the procedures of Fla. R. Crim. P. 3.172(c).  The court explained:

> On the day before Defendant entered his *nolo contendere* and guilty pleas, Defendant signed a written waiver of his rights.  The Sentence Recommendation document states the crimes with which Defendant was charged, maximum penalties for each, and the possibility of a sexual predator designation.  Further the document states in bold lettering, "I understand that I am giving up the following rights."  A list of nine rights follows, including the five Defendant contends that he did not know he was waiving.  Defendant signed this form stating that he had "read and underst[ood] the contends of this document" and that he had

"discussed with [his] attorney all of the ramifications or consequences of entering a plea of guilty or *nolo contendere*."  Further, Defendant's attorney also signed the document certifying that Defendant "fully underst[ood] this Sentence Recommendation and the consequences of entering it."

Hence, Defendant had his rights presented to him in writing, and he signed and dated the document acknowledging his knowledge and understanding of those rights.  The next day, at the plea colloquy, the Court inquired of Defendant whether he had read and signed the document.  Defendant acknowledged doing so and informed the court that Defendant had a 10th grade education and knew how to read and write the English language.  The Court finds no reason to believe that Defendant was either misunderstanding or unaware of the rights he waived by entering a plea agreement.  Consequently, Defendant is not entitled to relief on ground one of the instant motion.

(Ex. A, p. 27) (footnotes omitted).   The trial court's ruling was summarily affirmed by the state appellate court.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts.  Therefore, the "contrary to" prong of the AEDPA standard is not implicated.  In reviewing the state court's decision under AEDPA's "unreasonable application" prong, this Court must decide whether there was any reasonable basis for the state court's decision.  *Cullen v. Pinholster*,  — U.S. —, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011); *Branch v. Sec'y, Fla. Dep't of Corr.* 638 F.3d 1353, 1354 (11th Cir.  2011).

The state appellate court reasonably could have concluded petitioner's no contest pleas satisfied due process.  The record establishes all of the facts recounted in the trial court's order.  In addition to the circumstances identified in the trial court's order, this Court's own review of the plea colloquy reveals the following

exchange between the trial judge and petitioner:

> THE COURT:  I've been handed a Sentence Recommendation form that is an agreement for basically a plea straight-up, but it includes a summary of the charges against you and <u>it also includes a summary of the rights that you give up if you plead guilty or no contest to a criminal charge</u>.  It purports to have your signature on it.  Did you, in fact, sign this?
>
> THE DEFENDANT:  Yes, sir.

(Ex. A, p. 59) (emphasis added).  Later, the following exchange occurred:

> THE COURT:  Have you had enough time to discuss this case with your attorney?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  If you'd like more time to discuss it with him, you need to tell me that and I'll give you more time to talk to him about it.
>
> THE DEFENDANT:  I do –
>
> MR. AMMON [Defense counsel]:  We talked about it at the jail, Your Honor.
>
> THE DEFENDANT:  Yeah, but –
>
> THE COURT:  Do you need more time to talk to him?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Okay, then I'm going to allow more time.  I'm not going to accept the plea at this point.  Do you need more time just to talk to him about some questions today; is that what you want to do?
>
> THE DEFENDANT:  Yeah, I do.

> THE COURT:  Okay.  If you'll have a seat, then when we get to an
> opportune time for him to sit down and answer some questions, we'll
> give you that opportunity.
>
> THE DEFENDANT:  All right.

(Ex. A. pp. 64-65).  After addressing other cases, the trial judge called petitioner's

case again.  Defense counsel explained that petitioner had questions about the Jimmy

Ryce Act and how it would impact him, and that counsel had answered those

questions.  (*Id.*, p. 65).  The court asked petitioner if he had enough time to talk to

his attorney about the questions he had.  Petitioner responded, "Yes sir."  (*Id.*).

Petitioner argues that the signed waiver is insufficient to establish that his

waiver was voluntary and intelligent.  But the record contains more than that.

Petitioner's signed waiver was accompanied by petitioner's unequivocal, affirmative

responses to questions aimed at ensuring that petitioner understood what he had

signed (including the rights encompassed by the waiver) and the consequences of

proceeding with his pleas.  The state appellate court reasonably could have concluded

from this record that petitioner's pleas satisfied due process.

 Petitioner has failed to demonstrate that the state court's determination that his

pleas were knowing and voluntary reflects an adjudication that is either contrary to,

or an unreasonable application of, Federal law or an unreasonable determination of

the facts.  *See* 28 U.S.C. § 2254(d)(1) and (d) (2).  Accordingly, petitioner has not

demonstrated that he is entitled to federal habeas relief.

Ground 2      "Petitioner was denied the effective assistance of counsel guaranteed by
              the Sixth and Fourteenth Amendments by counsel's failure to advise
              petitioner of the United States Constitutional rights he was waiving by
              entering into a plea agreement."  (Doc. 1, pp. 4, 4-B through 4-C).

Petitioner alleges that prior to entering into the plea agreement, he was never

advised that he was waiving his substantive right to plead not guilty, the right to a trial by jury with the assistance of counsel, the right to compel attendance of witnesses on his behalf, the right to confront and cross-examine adverse witnesses, and the right to avoid compelled self-incrimination.  (Doc. 1, pp. 4, 4-B).  Petitioner explains:

> When Petitioner signed the sentence recommendation form, counsel "failed to fully explain and advise Petitioner of the constitutional rights he was waiving.  To the contrary, Petitioner had papers thrown down in front of him and was advised to sign certain spots.  The specific rights were not broken down and explained to Petitioner. . . . Petitioner just signed where he was told and trusted in his attorney to protect him[,] in the least, to make him aware of the actual meaning of the constitutional rights he was waiving. . . .
>
> Had Petitioner been advised of the rights he was waiving, he would not have entered into the plea agreement, rather, Petitioner would have exercised his rights to the fullest extent. . . .

(*Id*., pp. 4-B through 4-C).

Respondent concedes petitioner exhausted this claim by presenting it in his state postconviction motion.  (Doc. 16, p. 15).

A.     Clearly Established Federal Law

The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding.  *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).  When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  *Hill v. Lockhart*,

474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain).  To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56–57 (quoting *McMann v. Richardson*, 397 U.S. at 771).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland* at 689.  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of her duty when advising the accused.  *Stano v. Dugger*, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  Thus, while counsel can be

deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.      Federal Review of State Court Decision

The state trial court denied relief on this claim, finding that the Sentence Recommendation form which both petitioner and his attorney signed conclusively refuted petitioner's contention that counsel failed to advise petitioner of the constitutional rights he was waiving by entering no contest pleas. (Ex. A, p. 28). The court further concluded that even if defense counsel failed to explain the rights petitioner was waiving, petitioner could not establish prejudice under *Strickland*,

because the Sentencing Recommendation form petitioner read and signed provided that explanation. (*Id*.). The state appellate court summarily affirmed.

The state appellate court reasonably could have concluded petitioner failed to carry his burden under *Strickland*. In order to establish prejudice, petitioner has to show there is a reasonable probability that counsel's alleged error effected the outcome of the plea process. Petitioner cannot make that showing, because regardless of whether or not defense counsel verbally informed petitioner of the constitutional rights he was waiving by entering no contest pleas, the record demonstrates that petitioner was aware of that information from the Sentence Recommendation form he read and signed.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of clearly established federal law. Nor was the state court's decision based on an unreasonable determination of the facts in light of the state court record. Therefore, petitioner is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the convictions and sentences in *State of Florida v. Timothy Anton Holmes* in the Circuit Court for Escambia County, Florida, Case Nos. 05-3409, 05-3410, 05-3566, 06-0481, 06-0559, 06-0560, 06-0561, 06-0562, 06-0563, 06-0564, 06-0565 and 06-0619 be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 12th day of October, 2011.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).